May it please the court, Stuart Grant, on behalf of the class plaintiffs below, and I'd like to save five minutes, if that's okay with the court, for rebuttal. Sure, it will. Thank you. Your Honor, the case before you involves one of the biggest frauds in American history, and committed at Countrywide by Mr. Mozilo and the folks around him. Now, we brought a complaint, a derivative complaint, alleging federal and state claims, which was sustained by the district court. So it's kind of odd the way it comes up here. First, our complaint is sustained. Subsequent to that, the merger, which was necessitated by this fraud, Bank of America takes over Countrywide, and then the court below says, okay, you don't have shares anymore because you were forcibly merged out, and therefore you don't have standing, and that was done on a judgment on the pleadings. But it's important to know that the complaint itself, as I said, was already sustained. Now, interestingly, the defendants point out that the claims that we raised are similar to a federal security class action, and they seem nearly identical to this case. The difference being is that was brought on behalf of purchasers, as opposed to those who were longtime owners of Countrywide, the shareholders. And that settled for $624 million, as they point out to you. So what I'm saying is these are very serious claims that, for other plaintiffs, have already been paid. And so the question is for these plaintiffs, who were shareholders, who were defrauded, who there was a breach of fiduciary duty, will they get to move forward?  The court asked for a special briefing, and you were probably shocked when you read it, and you said, gee, who submitted which, because the briefs looked almost identical, where everyone agreed that Kona says that the standing issues are procedural, and federal common law governs. But Kamen says in order to determine federal common law, you look to the state law, and everyone agrees that the state law is Delaware. So really, I think the only dis- Do you think it makes any sense in the context of standing? I mean, I understand perfectly, Kamen, why it makes sense in the context of a demand requirement. But in terms of federal standing, why do you think it makes any sense for federal courts applying federal law to rely on a state law, which could vary from state to state? Well, that could. And I think where there is a specific rule, like 23.1 or something like that, I think it's real easy to say, okay, you know, the rules, you know, the feds have spoken, and this is the rules that we're going to use. I think when it comes to standing, that the, you know, the claims themselves, derivative claims, really, even though the substantive law is going to be federal law, the derivative claims are really kind of a creation of state law. And I think the expectation of the parties, which I think Kamen focuses on, is such that one is expecting state law to govern. The other challenge is if you don't do that, you're really asking the federal courts to create an entire body of common law, which in an area which has generally been left to the states. Well, not necessarily. I'm just talking about standing. I mean, I'm not talking about the demand requirement. Kamen is pretty clear on that, obviously. But, I mean, in terms of determining federal standing, I can't think of an analogous situation in which we have looked to state law to determine federal standing. I don't know that I can give you an analogous one. I think the – I think that it does make sense to, in keeping with the Ninth Circuit precedent as well as the Supreme Court, that it makes sense. And I think that the – So, I mean, for example, you say one state applies the continuous ownership requirement, another state doesn't. You can sue – you have federal standing in one state but not another on the same issue? Well, yes, but as long as you – I mean, we're talking about threshold questions standing, not whether you succeed on the merits. Right. But in that case, you would look to the same state law. In other words, you wouldn't look to where the parties are and there wouldn't be some kind of balancing there. You'd look to the state of incorporation. Well, sure. That was implied in my question. Right. You wouldn't have a different result in a particular case, the same case, because there's only one state of incorporation. But you could have a similar theory, different states of incorporation and completely different standing results. That's true. But that's true all the time in the state system. You know, if you have a Pennsylvania corporation or a Delaware corporation, both may sell on the New York Stock Exchange and you may have certain rights that one has that the other doesn't have. So I think the fact that – But I'm not talking about Erie. I'm talking – the application of Erie at all. I'm just talking about how we handle Federal common law in terms of determining standing. Right. I think the other reason for that is that often – and particularly in this case, as an example, you have Federal derivative claims that where the substantive law is Federal, and you also have derivative claims where the underlying substantive law is State breach of fiduciary duty. And so then you may have the awkward situation to say, okay, well, under Federal law, you have standing to bring derivative 10b-5 claims, but under State law you don't have standing to bring derivative breach of fiduciary duty claims. And the claims may be very, very similar. Right. But that – I mean, you could have the same result in this case. You might lack standing under Delaware law or Federal common law standing can – different, you might have standing under Federal common law. You could. I'm not saying that that couldn't be the result. I think to read Kona and Kamen consistently, it probably makes sense to have Federal common law look to the State law, unless, of course, as is noted, unless the State law is somehow contrary to the underlying policy. Go ahead. Anyway, I think the – while the Court may be going a different direction, I think the party's big disagreement is how to interpret Arkansas Teachers, the Delaware Supreme Court case. And I think in doing so, a few things have to be kept in mind. The first is that the Delaware Supreme Court doesn't sit en banc because the justices don't have enough to do. Nor does the Delaware Supreme Court write opinions on issues because they have nothing better to do. They do so for reasons. They sit en banc and they wrote the unanimous Arkansas Teachers opinion because it clarified an important issue of Delaware law. And I know that you all have read the Arkansas Teachers opinion carefully. I want to call your attention to something that potentially goes unnoticed. And it's just three stars. It's not even a word. It's three stars. So if you look at the first two paragraphs of the opinion, it affirms the judgment below. But then there's a space and there's three asterisks. And then the Court goes on for another four pages. So one page it says affirmed, three asterisks, and then it writes a different opinion. And it's the opinion that really is being discussed what's at issue in this case. And there's a reason why they did that. It wasn't just because they said she were continuing 25 years of common laws as the defendant's claim. They were sending a message to you because they knew what the procedural posture was. They knew at that time that the complaint had been sustained, that it then had been dismissed for lack of standing. They could have just written that first two paragraphs and been done with it. That's what an appellate court would normally do. But they put three stars there and said, well, there's a message coming. Four pages, 80 percent of that opinion is the message to you. And I think that one has to take that seriously. Now, the defendants say, or the appellates say, that there, that it wasn't really a message, that they say, you know, they were just talking about direct claims even though derivative claims are at stake. But direct claims are never extinguished by a merger. So why would Arkansas teachers be talking about direct claims when they have nothing to do with a merger and standing? Direct claims always continue on past a merger. It's only because it's derivative claims. And the Delaware Supreme Court is not so illogical that they bounce back and forth without telling you what kind of claims are between direct and derivative. As they do analysis, I think within three sentences to buy what they say, they have to bounce back and forth four times. It is, however, a very narrow opinion and a very narrow exception. And it's not something that you'd expect to see in the couple of years of cases that have followed because you very rarely have fraud that is so great that it drives a company so far into the ground that its choice is basically either bankruptcy or a fire sale. And that's what happened here. And I don't think there's any other case with the possibility of Massey, which is still kind of on a stay in the Chancery Court in Delaware, where this has happened since the Delaware Supreme Court issued Arkansas teachers. And because of that, you wouldn't expect to see a wealth of law. But the Supreme Court was so concerned to say, well, wait a minute, we don't want any other court to think that simply because we have this fraud exception that, you know, any time you say, well, gee, there was fraud involved, you get to, you know, you get to move forward with your claims. What they say is when the fraud itself forces the merger, Delaware law recognizes a single inseparable fraud when directors cover massive wrongdoing with an otherwise permissible merger. And that's what's very, very specific to this case. And they say when that happens, that even though it's derivative, the recovery will go to those former shareholders themselves, and the standing continues. And I think it's made very, very clear. But as I said, this case, Arkansas teachers, was written for you. The Delaware Supreme Court knew exactly what they were doing. I would ask that you take their message and advice and simply, you know, rule that we do have standing. But if you choose not to, I would ask that at least you ask the Delaware Supreme Court to have another opportunity to let you know even more directly that there is standing in this case. Thank you, counsel. Thank you. Good morning, members of the panel. My name is Brian Pastazensky. I represent Applee Countrywide Financial Corporation. Mr. Grant is correct that in briefing the panel's questions, there was agreement regarding choice of law. But if I may address Your Honor's question at the outset, why is this a matter of why isn't this a matter of standing where Federal common law should govern and State law not be looked to? And I think the answer to that is found in Cayman itself, Your Honor. Cayman itself at page 96 of the opinion, 500 U.S. 96, refers to the demand requirement as being a matter of substance. It is in, I believe, in a fundamental way much like a form of standing requirement. The Court said it is substantive. I think Cayman has actually decided correctly. I don't have a quarrel with Cayman. The question I have is when you now then get on to a question of Federal standing, then that's a different matter. Go ahead. I understand Your Honor's point. I haven't come to rest on this yet. Your Honor, I'm afraid. No, no, I'm not. I didn't infer that Your Honor was quibbling with Cayman. But I do think there's a parallel there because of the nature of how the Court described the demand requirement as substantive. That characterization of that issue as substantive is a link, I think, to the issues before this panel. There's no dispute from, in fact, there's an affirmative argument from plaintiffs that what we have here, the continuity of ownership requirement, is likewise substantive. In the same way that the Supreme Court looked to State law to define the contours of that substantive issue in Cayman, I think the analysis applies on all fours here because you also have a substantive question, continuity of ownership. And to the extent that there are procedural requirements that Rule 23.1 sets down,  I don't think a rule of procedure can, under Rule 82, Federal Rule of Civil Procedure 82, can regulate this Court's jurisdiction, can regulate a matter of substantive standing. That is left under the Cayman analysis to State law, Your Honor. And I think because Cayman described demand as substantive, that provides the analogy to the arguments the parties have made here. Also substantive, continuity of ownership, therefore, the Cayman analysis would apply. Your Honor, if it is a matter of Federal common law, do you see any, is it just an open field we're faced with, or do you think that Federal common law would essentially be the same as Delaware law? Your Honor, I believe that without reference to State law, the answer here would be exactly what Judge Felser concluded in her denial of the motion of reconsideration. There should be no difference, and I believe is no difference. In Quinn, this Court made very clear, number one, that continuity of ownership has been consistently inferred from the plain language of Rule 23.1, and number two, that this Court has never found a situation warranting any sort of exception, equitable or otherwise, to that very clear, very bright-line requirement. I submit, Your Honor, that there would be no difference under Federal common law if it were being created in a vacuum as a matter of procedure only, that there would be no difference here between 23.1 as discussed in Kona, as discussed in Quinn, as addressed in other cases within the Ninth Circuit, and the result that we believe 25 years of unbroken substantive law in Delaware would require here under the Delaware precedents. And we addressed that in our supplemental brief to this panel. We do not believe this is a case that warrants any sort of expansion of the law that exists in the Ninth Circuit as a matter of equity or otherwise. Judge Felser's opinion, I think, is quite clear, and I would submit that because she was exercising, she said, assuming I have discretion, I decline to exercise it for the thoughtful reasons she gave. I submit that should be honored by this Court as exactly the right ruling under this Court's precedent. So I think the answer to Your Honor's question is no, there would be no difference, Your Honor, absolutely no difference. And to the extent that Plaintiffs, the Arkansas teachers here, is arguing that this panel ought to fashion a broader rule, a broader rule that would permit them to come to this Court when they may not go, certainly on their State law claims, to a Delaware court, given the limitations of Delaware substantive law, that would run headlong into the Rules of Decision Act and the Erie Doctrine, because this Court would then expand the Delaware rights that they agree govern their claims, certainly their State law claims. If I may, with the Honors, with Your Honors and the panel's permission, address what Mr. Grant spends most of his argument addressing, and that is what exactly does Arkansas teachers say? We think that Judge Felger was right. We think that the California Court of Appeal in Volare was right, that what this decision is doing is not expanding or clarifying 25 years of unbroken substantive law in Delaware, an issue that was not even before Vice Chancellor Noble, that was not before the Supreme Court, but rather was delineating a kind of direct attack on the merger, which was the question, the only question before the Vice Chancellor and the only question before the Supreme Court. And the first place you see that, which Mr. Grant didn't mention, the first place you see that is in the very first paragraph of the Supreme Court's opinion in Arkansas teachers. It could not be more clear and more explicit. The Court said when the Vice Chancellor approved the settlement and allowed the merger to go through, it had the effect of extinguishing, extinguishing Arkansas teachers' derivative claims under Delaware precedent. There is no qualification. There is no suggestion that that is what the law used to be or what the Vice Chancellor thought the law is. It is the Supreme Court articulating what the law in Delaware is and what its effect was. And it's not surprising that three months, three months after this opinion, Arkansas teachers, was issued, the Delaware Supreme Court in the Lambrecht case restated and reaffirmed this principle of continuity without any reference to Arkansas teachers, without any suggestion that it had clarified or expanded the law. That's where I would start, but that's not where it ends. There are very direct and clear markers in this opinion as to what the Court is talking about. Number one, when the Court is describing this idea of an inseparable fraud, an inseparable fraud that makes a merger inevitable, the Court in two places in its opinion cites a reference to the Brash case at page 764. That is significant because in the Brash case at page 764, the Chancery Court refused to dismiss a direct attack on a merger in language that sounds very similar to the language used by the Delaware Supreme Court. When it wanted to talk about the exception to the loss of derivative standing, it also referred to Brash, but a different part of Brash, page 767, not 764, which it refers to twice in referring to the irreparable harm and referring to this claim that Mr. Grant claims is somehow a reference to his derivative rights. Number two, at the end of the decision, at the end of the decision, the Court says what the Chancery Court was faced with addressing is, did Mr. Grant's clients present direct attacks on the merger that were sufficient to lead this Court, both the Chancery Court and the Delaware Supreme Court, to set the merger aside and invalidate the settlement, not approve the settlement? And the Supreme Court says this is a claim, this inseparable fraud claim that plaintiffs did not make to the Chancery Court, but had they made it, then two things would have been true. Number one, the injury would have been to the shareholders and not to the corporation. And number two, that the recovery would go to the shareholders directly and not to the corporation. And this is significant for two reasons. Number one, a derivative claim is a claim on the behalf of the corporation because the corporation has been injured. Irrespective of Mr. Grant's argument today in his papers, even though he cites not a single case that has ever permitted this, that there should be some sort of a pass-through derivative recovery where the dollars would bypass the corporation and flow directly to the shareholders, putting that aside for the moment, what his argument can't address is the injury For him to prosecute a derivative claim, even if the dollars were to go under his thinking directly to the shareholders, there still must be an injury to the corporation. Otherwise, it is not a derivative claim. But what the Supreme Court at the end of Arkansas Teachers says quite clearly and explicitly is that the injury would be to the shareholders, and that's why the shareholders and not the corporation would get any recovery. It is unmistakable that what the Supreme Court there is referring to is the Thule, T-O-O-L-E-Y, the Thule dichotomy, the test that the Supreme Court in a Watershed case just a few years ago came down and said this is what defines a direct claim versus a derivative claim. There is no question that when you look at all the markers, number one, the first paragraph of the case where it said the claims were extinguished, number two, the references to Brash in two places at page 764, which is describing a direct attack on a merger that the Court refused to dismiss, though it did dismiss in that same case the derivative claims for loss of standing. And number three, the description of how it would be the shareholders being injured and not the corporation, I submit to this panel that it is unmistakable that what this Court was describing, what the Supreme Court was describing, was not some change, modification, clarification of derivatives of the loss of standing rule. In dicta, after 25 years of confirmation in the Supreme Court case and chancery court case after another, that it suddenly changed everything. And that's why it did not mention Arkansas Cheaters at all in Lambrecht, because the law didn't change. And the consequences of Mr. Grant's argument here are far-reaching. In Lewis v. Ward, which comes after Lewis v. Anderson and reaffirms the narrow, precise requirement that in order to escape the loss of derivative standing, a plaintiff must show that the merger was affected solely, merely to extinguish the derivative claims, the Court said that our rule, our rule in Delaware, represents a reconciliation not only of Delaware cases, but the requirements of Delaware statutory law, namely sections 259 and 327 of the Delaware Corporate Code. 259, very importantly, says that when a merger is affected, all of the assets, including claims like derivative claims, pass solely to the acquirer. The word solely, in terms of who owns that right, is probably used more than a half-dozen times by the Supreme Court in Lewis v. Ward. What Mr. Grant is saying the Delaware Supreme Court did in dicta in Arkansas Cheaters is upset that careful balancing and reconciliation not only of case law, but of the mandates of Delaware statutory law that Lewis v. Ward talk about having done. That's the foundation and the ground for this rule. The other thing it would do is, frankly, is throw the whole law of Delaware mergers into, frankly, confusion and uncertainty. When a merger happens now, it is very clear that it's not really a merger, it's just a reorganization, or the merger was affected solely, merely for the purpose of getting rid of those claims. Very bright line. And that's what the Supreme Court has referred to. We have a very bright line, very precise test. Mr. Grant says, well, what they've done is they've enlarged or clarified, but I submit, if Mr. Grant is right, this narrow, precise exception will have been emasculated, because what a plaintiff's lawyer will be able to do is to say that the underlying premerger misconduct or alleged misconduct was so significant that it forced a company to the brink and made the merger inevitable. That exception would, for all practical purposes, historically precise and narrowly defined, would cease to exist for all practical purposes, because a plaintiff would no longer have to plead or prove that a merger was affected solely, merely for the purpose of extinguishing those claims. And I gather you agree with your colleague that if we had any doubts about that, we ought to certify, right? Your Honor, we believe there is no doubt. No, I understand. But to the extent that Your Honor believes it is not crystal clear that Arkansas teachers did not change the law, then we agree that this panel should certify to the Delaware Supreme Court. But we believe, frankly, given what the opinion says and doesn't say, given what the Delaware Supreme Court did just three months after Arkansas teachers in reaffirming 25 years of substantive Delaware law, we submit there should be no doubt in the mind of this panel. But to the extent there is, we don't disagree with what Your Honor just said. And in the 19 seconds that I have left, Your Honor, one thing I would like to point out, if the panel is not aware, last night we filed a 27, Rule 27 letter, a notice of supplemental authority. We became a – I'm sorry? 28. I'm sorry. I misspoke. 28. We became aware of something just yesterday afternoon. We filed it with this panel as soon as we could. It is a brief filed by one of the plaintiffs in this case, Lampers, represented by the same counsel in which they characterized this decision, Arkansas teachers, in exactly the same way that I have described it this morning, to Your Honors, in exactly the same way that we have described it in our briefs. And I think it's telling – I think it's telling in terms of the appropriateness and correctness of our reading that they themselves have also read it just the same way in front of a vice chancellor of the Delaware court. And I thank you very much for your indulgence. Thank you. Thank you. Let me start off with the last point. What he said simply isn't true. The fact that he's put it in something that's two years old on the night before the argument is, you know, I think just offensive. So if the Court wants to take that submission seriously, I would ask to have some time to respond to it. But it's just not true. And it's a gross misreading of all of it. Second, the statute that he raises and says, well, gee, you know, everything passes through to the acquiring company, if that were true and would preclude Arkansas teachers from being read properly, then really there could be no exception. You can't have some exceptions and say, well, that's okay with the statute, but if you, you know, refine the exception, then all of a sudden that violates the statute. So that makes no sense. One of the things that Arkansas teachers specifically says, well, two things that we have to look at. First, he says, well, this is what the Supreme Court said that, you know, the first sentence of the opinion or first page of the opinion, well, that's what the Court was reciting what the Vice Chancellor did. He denied the application and thus doesn't say what the Supreme Court said. And that's very important. The question is, why would the Court go on for 80 percent of its opinion to do what it did if really it was just reiterating 25 years of law? It wasn't. Otherwise, they would have just said, pursuant to Aronson, you know, we affirm. Two paragraphs, we're done. But they took the time to really write. Now, Your Honor had asked about common law. I think, interestingly enough, the Federal common law is actually discussed in Kona on page, I guess it's four. It talks about the second situation in which equitable standing has been granted in the merger cases. And in these cases, equitable standing has been granted where the plaintiffs contended they had lost their stock due to the same wrongful conduct that was the subject of the derivative suit they were trying to bring. It sounds exactly like Arkansas teachers. And it's in Kona. Yes, Your Honor. Kona was the one that gave me the pause. Right. And so what I say is, you know, to some extent, as the Ninth Circuit describes common law, it is Arkansas teachers. It's not pre-Arkansas teachers. It's Arkansas teachers. And so I think they're the same, which is what Your Honor asked the question, but I think they're the same, Kona and Arkansas teachers, not pre-Arkansas teachers. And finally, the idea that somehow the standing issue and the interpretation of either Delaware law or common law is discretionary or abuse of discretion I think is silly. I mean, this is a de novo issue on standing before the Court. And I think that's, you know, the Court below, I mean, you can take it for what it's worth, but it's de novo before Your Honors. Finally, the recovery itself, it's not that the claim converts from a derivative claim to a direct claim, but the recovery itself, as is on page 7 of the Arkansas teachers' opinion itself, that if TRS had successfully pleaded its fraud claim, that TRS rather than Countrywide could recover from the former Countrywide directors. In that case, the injured parties would be the shareholders who would have post-merger standing to recover damages instead of a corporation. And the reason is, if you just kind of think about it logically, you've got a company that's worth $50 billion. The directors just drive this company into the ground, and in a matter of months it's worth, market price, a billion or two. And they quickly find a white knight to come and take them over who pays $2 billion for it and says, yes, you caused huge losses and all that kind of stuff, but that's now reflected in the stock price. Now, the shareholders have lost value, but the company has been hurt. The company doesn't have the assets it thought it had anymore. Now, the acquiring company only pays $2 billion. Why should they then turn around and say, I can sue you for the $48 billion that you damaged that you did to the company? They bought the damaged goods. They're not then going to be able to sue for, you know, the damage that was caused. They paid a damaged good price and bought damaged goods. But whose goods were damaged? The shareholders. They're the only people who've been damaged and the only people that equity will say can recover. And so if you say that they're right and the only people who get to sue is the acquiring party, then one of two things happens. Number one, they get a windfall, they buy something for $2 billion that they can then recover damages for $48 billion, or in this case, the sweetheart deal that goes on is countrywide. Remember, there's only a nominal defendant here. Mazzillo's not here, the real bad guy. He's not here. The nominal defendant, why do they care so much? Because they indemnified Mazzillo to buy this at a fire sale price. And he walks scot-free if we don't have standing. And that would be a crime. Thank you, counsel. Thank you. The case is adjourned. It will be submitted.
judges: Navarro, Reinhardt, Thomas